UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

RECEIVED

FEB 28 2018

U.S. CLERK'S OFFICE
EVANSVILLE, INDIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | CAUSE NO. 4:18-cr-5 - SEB- VTW |
| | ) | |
| JAMES D. LINVILLE, | ) | -01 |
| aka "SERGEANT BOB DAVIS," | ) | |
| THOMAS A. JOHNSON | ) | -02 |
| aka "PAUL BRADLEY," | ) | |
| AMY L. BENNETT, | ) | -03 |
| JOANIE R. WATSON, | ) | -04 |
| | ) | |
| Defendants. | ) | |

## **INDICTMENT**

## **GENERAL ALLEGATIONS**

During the times relevant to this Indictment:

### **Organizations Used to Facilitate the Conspiracy and Scheme to Defraud**

1.     Woodforest National Bank ("Woodforest") was a bank engaged in banking activity effecting interstate commerce with its corporate headquarters, check processors, and computer servers located in Texas.  Woodforest has branches in approximately seventeen (17) states, including Indiana.

2.     Your Community Bank was a bank engaged in banking activity effecting interstate commerce with its corporate headquarters in Indiana and its processors and computer servers located in Texas.  Your Community branches were all located in Indiana.

1

3. The Scott County State Bank was a bank engaged in banking activity effecting interstate commerce with its corporate headquarters in Indiana and its processors and computer servers located in Texas. Scott County branches were all located in Indiana.

4. Citizens Union Bank was a bank engaged in banking activity effecting interstate commerce with its corporate headquarters, account processors, and computers servers located in Kentucky. Citizens Union had approximately sixteen (16) branches all located in Kentucky.

5. First Savings Bank was a bank engaged in banking activity effecting interstate commerce with its corporate headquarters located in Indiana and its processors and computers servers located in Florida. First Savings had approximately sixteen (16) branches all located in Indiana.

6. Stock Yards Bank was a bank with its corporate headquarters, check processors, and computer servers located in Kentucky. Stock Yards had branches in Indiana and other states.

### Participants in the Conspiracy and Scheme to Defraud

7. JAMES D. LINVILLE created Wounded Warrior Fund Inc. and served as President. LINVILLE also established Wounded Warrior Foundation Incorporated. LINVILLE solicited donations under false pretenses, opened bank accounts, deposited donated checks, withdrew cash from the company account, and used the money for his personal benefit.

8. THOMAS A. JOHNSON served as Vice President of Wounded Warrior Foundation Incorporated. JOHNSON solicited donations under false pretenses, picked up donations from businesses and individuals, opened bank accounts, deposited donated checks, withdrew cash from the company account, and used the money for his personal benefit.

9.     AMY L. BENNETT served as President of Wounded Warrior Foundation Incorporated. BENNETT picked up donations from businesses and individuals, opened bank accounts, deposited donated checks, withdrew cash from the company account, and used the money for her personal benefit.

10.     JOANIE R. WATSON picked up donations from businesses and individuals, received funds from the fraudulent scheme, and used the money for personal use.

## Objectives of the Conspiracy and Scheme to Defraud

11.     The participants in the conspiracy and scheme to defraud sought to enrich themselves by fraudulently soliciting and receiving in excess of approximately one thousand (1,000) donations from individuals and businesses in the Southern District of Indiana and elsewhere, totaling an amount exceeding approximately $125,000 in check or cash donations, in-kind donations, and gift cards. The donations were made to Wounded Warrior Fund, Inc. and Wounded Warrior Foundation, Incorporated, based on the false pretense that the funds would be used for charitable purposes, including assistance to United States veterans and their families. Instead, the donations were used for the personal benefit of the participants in the scheme.

## Manner and Means of the Conspiracy and Scheme to Defraud

12.     In December 2011, LINVILLE submitted the required forms to the Indiana Secretary of State for Wounded Warrior Fund, Inc. to become a non-profit domestic corporation. LINVILLE, with assistance from a person known to the Grand Jury, submitted an online application to IRS.gov to obtain an Employer Identification Number ("EIN") for Wounded Warrior Fund, Inc.

13.     In August 2014, LINVILLE and JOHNSON submitted the required forms to the Indiana Secretary of State for Wounded Warrior Foundation Incorporated to become a non-profit

3

domestic corporation. LINVILLE, JOHNSON, and a person known to the Grand Jury submitted an online application to IRS.gov to obtain an EIN for Wounded Warrior Foundation Incorporated.

14.     LINVILLE and JOHNSON contacted businesses and individuals in the Southern District of Indiana and elsewhere in an attempt to raise funds for Wounded Warrior Fund, Inc. and Wounded Warrior Foundation Incorporated by stating that they were raising funds for veterans and their families in Indiana and the surrounding areas. LINVILLE and JOHNSON solicited donations via phone, facsimile, and in person.

15.     LINVILLE and JOHNSON used aliases of "Sergeant Bob Davis" and "Paul Bradley," respectively, when making solicitations. A member of the conspiracy also used the alias "Steve Wilson" when making solicitations. By using aliases, members of the conspiracy masked their true identity. In addition, by using the name "Sergeant Bob Davis," LINVILLE misled individuals by causing them to believe they were being solicited by an individual in the military and thus added credibility to his request.

16.     Some individuals and businesses who were solicited by the participants in the conspiracy were told or led to believe that 100% of their donation would go to veterans and their families.

17.     When soliciting donations, participants in the conspiracy inferred or directly made statements that led individuals to believe they represented the nationally renowned legitimate charity Wounded Warrior Project or an organization affiliated with this legitimate charity. Based on these representations and beliefs, some individuals made checks payable to the Wounded Warrior Project which were later deposited into checking accounts for Wounded Warrior Fund, Inc. and Wounded Warrior Foundation, Inc.

18.    Participants in the conspiracy provided flyers to individuals who were solicited for donations. One of the flyers for Wounded Warrior Fund, Inc. proclaimed to be for the "Hoosier Overseas Calling Card Program." It stated, "The 'Indiana Call Home Campaign' is a project of the Wounded Warrior Fund Inc. An Indiana not-for-profit organization serving Indiana veterans. In addition to our international calling card campaign, Indiana veterans are assisted through food pantry programs, assistance to VA hospitals and Veteran Centers and veteran transportation assistance programs." It further stated, "Funds received from our supporters will be used to help our Indiana veterans, regardless of the branch they serve. Cards are provided to the VFW Department of Indiana, the National Guard, Camp Atterbury, and the USO."

19.    Another flyer for Wounded Warrior Foundation, Inc. for a similar purported program states, "Wounded Warrior Foundation, Inc is IRS Approved 501(c)(3) #47-1549695." It also states, "The 'Indiana Call Home Campaign' is a project of Wounded Warrior Foundation, an Indiana 501(c)(3) not-for-profit organization serving Indiana veterans." The flyer states, "Since 2006, we provide approximately 942,000 minutes of long distance calling time to our Indiana servicemen and women stationed overseas, helping to protect our freedom!!"

20.    Another flyer for Wounded Warrior Foundation, Inc. solicits donations for the "Veteran Family Assistance Program." It states, "AN INDIANA CHARITY SERVING INDIANA Wounded Warrior Foundation, Inc is IRS Approved 501(c)(3) #47-1549695." It states, "The 'Veteran Family Assistance Program' is a project of Wounded Warrior Foundation, an Indiana 501(c)(3) not-for-profit organization serving Indiana veterans. In addition to our family assistance program, Indiana veterans are assisted through food pantry programs, veteran centers, and transportation assistance." It also states, "Thank you for your generous support for our special 'Hoosier Overseas Calling Card Program.' Funds received from our supporters will

5

be used to help our Indiana veterans, regardless of the branch they serve. Cards are provided to the VFW Department of Indiana, the Indiana National Guard, Camp Atterbury and the USO. "

21.     Another flyer faxed to an individual for this purported program by Wounded Warrior Foundation, Inc. stated the Veteran Family Assistance Program had the following purpose: "The funds received will go to assist families of active military personnel and our military veterans and their families who are having financial hardships. We will assist these families with such items as clothing, school supplies, sporting equipment, food baskets, and holiday shopping for the children. We do this out of respect for their dedication and willingness to serve our country."

22.     LINVILLE and JOHNSON represented to individuals and businesses in the Southern District of Indiana and elsewhere that they were soliciting donations for a "Back to School Program" for Wounded Warrior Foundation. This purportedly involved raising money for school supplies for children of active-duty military families. In return, members of the conspiracy promised individuals and businesses a "thank you ad" in their "2015 yearbook," which purportedly had a large circulation in the local community. This yearbook was never created nor distributed.

23.     The statements that Wounded Warrior Fund, Inc. and Wounded Warrior Foundation Inc. were each 501(c)(3) charitable organizations led individuals and businesses to believe that each organization was a legitimate charitable organization and as a result any donation would be tax deductible. Neither Wounded Warrior Fund, Inc. nor Wounded Warrior Foundation Incorporated were section 501(c)(3) charitable organizations properly registered with the IRS. As such, contributions to Wounded Warrior Fund, Inc. and Wounded Warrior Foundation Incorporated were not tax deductible.

24.     Based on representations made by members of the conspiracy and materials provided by members of the conspiracy to potential donors, individuals and businesses in the Southern District of Indiana and elsewhere made donations to the Wounded Warrior Fund, Inc. and Wounded Warrior Foundation Incorporated by check, cash, in-kind donations such as merchandise, and gift cards.

25.     BENNETT, WATSON, JOHNSON, and others known and unknown to the Grand Jury picked up checks made payable to Wounded Warrior Fund Inc., Wounded Warrior Foundation, Inc. and similarly named entities from businesses and individuals in the Southern District of Indiana and elsewhere which were donated for the purpose of helping veterans and their families in Indiana and elsewhere.

26.     LINVILLE, JOHNSON, BENNETT, WATSON, and other members of the conspiracy known and unknown to the Grand Jury provided donation receipts via fax or in person delivery to the individuals and businesses who donated to Wounded Warrior Fund, Inc. and Wounded Warrior Foundation Incorporated so as to appear they were legitimate charitable organizations.

27.     One example of Wounded Warrior Fund, Inc. receipt stated, "'Overseas Veteran Calling Card & Family Assistance Programs' Proudly Service Indiana Veterans." The receipt stated, "An IRS approved 501(c)(3) not-for-profit charity – EIN: 45-3948702." The receipt further states, "Please keep a copy of this receipt with your records for "tax deduction purposes." Finally, it states, **THANK YOU FOR SUPPORTING INDIANA'S VETERANS AND THEIR FAMILIES**."

28.     Another example of a Wounded Warrior Foundation, Inc. receipt stated, "'Overseas Veteran Calling Card & Family Assistance Programs' Proudly Service Indiana

Veterans." The receipt states, "An Approved 501(c)(3) non-for-profit charity – EIN: 47-1549695." The receipt further states, "Please keep a copy of this receipt with your records for "tax deduction purposes." Finally, it states, "**THANK YOU FOR SUPPORTING INDIANA'S VETERANS AND THEIR FAMILIES.**"

29.     Members of the conspiracy picked up in-kind donations such as tools and jewelry from businesses in the Southern District of Indiana which were donated to Wounded Warrior Fund, Inc. or Wounded Warrior Foundation, Inc. Members of the conspiracy used the in-kind donations for their personal benefit or sold the merchandise at local pawn shops.

30.     Members of the conspiracy picked up gift card donations from businesses in the Southern District of Indiana which were donated to Wounded Warrior Fund, Inc. or Wounded Warrior Foundation, Inc. Members of the conspiracy used the gift cards for their personal benefit or sold the gift cards for cash at local pawn shops.

31.     LINVILLE, JOHNSON, and BENNETT opened checking accounts for Wounded Warrior Fund Inc. and Wounded Warrior Foundation, Incorporated at banks located in the Southern District of Indiana and elsewhere, which are described in Paragraphs One through Six of the Indictment. When opening checking accounts at these banks, members of the conspiracy provided the banks paperwork to represent the purported legitimacy of each organization, including the Articles of Incorporation from the Indiana Secretary of State and the assignment of an EIN by the U.S. Department of Treasury.

32.     LINVILLE, JOHNSON, and BENNETT deposited checks donated from individuals and businesses in the Southern District of Indiana and elsewhere into checking accounts for Wounded Warrior Fund, Inc. and Wounded Warrior Foundation, Inc. at banks in the Southern District of Indiana and elsewhere. Checks were made payable to variations of

Wounded Warriors, Wounded Warrior Fund, Inc. and Wounded Warrior Foundation, Inc. In addition, checks were deposited that were made payable to the Wounded Warrior Project.

33. LINVILLE, JOHNSON, BENNETT, and WATSON wrote checks to themselves from the checking accounts for the Wounded Warrior Fund, Inc. and Wounded Warrior Foundation, Inc. Members of the conspiracy also wrote checks to "Cash." These checks were cashed at banks, and members of the conspiracy used the money for personal expenditures not related to the stated purpose of the organizations of helping veterans and their families.

34. LINVILLE, JOHNSON, and BENNETT drafted checking withdrawal slips for the checking accounts of the Wounded Warrior Fund, Inc. and Wounded Warrior Foundation, Inc. and submitted them to the respective banks. Members of the conspiracy obtained cash from these accounts and used the money for personal expenditures not related to the stated purpose of the organizations of helping veterans and their families.

35. LINVILLE, JOHNSON, and BENNETT made ATM withdrawals of cash from checking accounts of the Wounded Warrior Fund, Inc. and Wounded Warrior Foundation, Inc. Members of the conspiracy used the money for personal expenditures not related to the stated purpose of the organizations of helping veterans and their families.

36. Members of the conspiracy used debit cards for checking accounts of the Wounded Warrior Fund, Inc. and Wounded Warrior Foundation, Inc. to make personal purchases not related to the stated purpose of the organizations. This included debit card purchases at Hollywood Casino, Cox Smoker's Outlet, Redbox, Charlestown Liquor, and medical providers.

37. Members of the conspiracy called local businesses to have food, hotels, and services "comped" based on the false pretense that the donated items were for veterans. Members of the conspiracy used these donations for their own personal benefit.

38.     Donations from individuals and businesses in the Southern District of Indiana and elsewhere to Wounded Warrior Fund, Inc. and Wounded Warrior Foundation, Inc. were not used to help veterans and their families but instead were used for the personal gain of the members of the conspiracy.  Donations made to Wounded Warriors Fund, Inc. and Wounded Warriors Foundation Inc. were not used for the "Indiana Call Home Campaign," the "Veteran Family Assistance Program," or the "Back to School Program" as falsely conveyed by members of the conspiracy and promotional materials which were distributed.

## Overt Acts of the Conspiracy and Scheme to Defraud

### I.     Corporate Filings

39.     On or about December 1, 2011, JAMES LINVILLE and a person known to the grand jury created and filed documents with the Indiana Secretary of State for Wounded Warrior Fund Inc., including its Articles of Incorporation.  LINVILLE is listed as the President and registered agent of the self-proclaimed Indiana Nonprofit Corporation which is categorized as a "public benefit corporation."  The Articles of Incorporation state the purpose of the business is "to support US troops and their families by preparing and distributing care packages."  Moreover, the document states, "Distribution of assets would be made to a 501(3)(C) [sic] non propfit [sic] organization" upon dissolution or final liquidation.

40.     On or about December 1, 2011, LINVILLE and a person known to the grand jury assisted, aided, and completed an online application using the IRS.gov website to obtain an EIN for Wounded Warrior Fund Inc.  An EIN is a unique nine-digit number assigned by the Internal Revenue Service to business entities operating in the United States for purposes of identification.  The EIN assigned to Wounded Warrior Fund Inc. was 45-3948702.

41.     On or about August 11, 2014, LINVILLE, JOHNSON, and a person known to the grand jury created and filed documents with the Indiana Secretary of State for Wounded Warrior Foundation Incorporated, including its Articles of Incorporation. BENNETT is listed as a registered agent for the self-proclaimed Indiana Nonprofit Corporation which is categorized as a "public benefit corporation." BENNETT and JOHNSON are both listed as incorporators for the entity. The Articles of Incorporation state the purpose of the business is "to provide assistance to military veterans and their families." Moreover, the document states that "assets will be distributed to a 501(3)(C) [sic] organization" upon dissolution or final liquidation.

42.     On or about August 11, 2014, LINVILLE, JOHNSON, and a person known to the grand jury assisted, aided and completed an online application using the IRS.gov website to obtain an EIN for Wounded Warrior Foundation Incorporated. The EIN assigned to Wounded Warrior Foundation Incorporated was 47-1549695.

43.     On or about May 22, 2015, BENNETT and LINVILLE filed a "Notice of Change of Principal Office Address" form with the Indiana Secretary of State for Wounded Warrior Foundation Incorporated, which changed the principal office address from 206 East Main St., Henryville, IN to 800 Meigs Ave, #3, Jeffersonville, IN 47130.

## II.     Bank Transactions

### A.  Woodforest National Bank

44.     On or about October 12, 2012, LINVILLE opened a checking account ending in 0729 in the name of Wounded Warrior Fund, Inc. at Woodforest National Bank in Seymour, Indiana.

45.     Between on or about October 12, 2012 and on or about February 20, 2013, LINVILLE deposited approximately ninety-three (93) checks made payable to Wounded Warrior Fund Inc. into a Woodforest checking account ending in 0729.

46.     On or about October 24, 2012, LINVILLE placed an order for checks from Harland Clarke for a Woodforest checking account for Wounded Warrior Fund, Inc. with an account number ending in 0729.

47.     Between on or about October 12, 2012 and on or about March 18, 2013, LINVILLE wrote approximately eleven (11) checks to himself from the Woodforest account ending in 0729, totaling approximately $1,600.

48.     Between on or about October 12, 2012 and on or about March 18, 2013, LINVILLE wrote approximately five (5) checks to medical providers from the Woodforest account ending in 0729.

49.     Between on or about October 12, 2012 and on or about March 18, 2013, LINVILLE made approximately twenty-nine ATM withdrawals and a teller cash withdrawal, totaling approximately $6,300.  This includes an ATM withdrawal on or about February 12, 2013, that LINVILLE made from the Woodforest account ending in 0729 at Hollywood Casino in Lawrenceburg, Indiana.

50.     Between on or about October 12, 2012 and on or about March 18, 2013, LINVILLE made debit card purchases from the Woodforest account ending in 0729  at Hollywood Casino, Cox Smoker's Outlet, and Redbox.

**B. Your Community Bank**

51.　On or about February 21, 2013, LINVILLE opened a checking account ending in 5537 in the name of Wounded Warrior Fund, Inc. at Your Community Bank in New Albany, Indiana.

52.　On or about February 21, 2013, LINVILLE obtained checks for a Your Community Bank checking account for Wounded Warrior Fund, Inc. with an account number ending in 5537.

53.　Between on or about February 21, 2013 and on or about April 1, 2013, LINVILLE deposited multiple checks made payable to Wounded Warriors Fund into a Your Community Bank checking account ending in 5537.

54.　Between on or about February 21, 2013 and on or about April 1, 2013, LINVILLE wrote multiple checks to himself from the Your Community Bank checking account ending in 5537.

## C. Scott County State Bank

55.　On or about April 11, 2013, LINVILLE opened a checking account ending in 3552 in the name of Wounded Warrior Fund, Inc. at Scott County State Bank in Austin, Indiana.

56.　On or about April 11, 2013, LINVILLE obtained checks for a Scott County State Bank checking account for Wounded Warrior Fund, Inc. with an account number ending in 3552.

57.　Between on or about April 11, 2013 and on or about December 10, 2013, LINVILLE deposited approximately 287 checks made payable to Wounded Warrior Fund and similarly named entities into a Scott County State Bank account ending in 3552.

58.    Between on or about April 11, 2013 and on or about December 10, 2013, LINVILLE wrote approximately twenty-two (22) checks made payable to "cash" from the Scott County State Bank account ending in 3552, totaling approximately $7,900.

59.    Between on or about April 11, 2013 and on or about December 10, 2013, LINVILLE wrote multiple checks to himself from the Scott County State Bank account ending in 3552, totaling approximately $1,400.

60.    Between on or about April 11, 2013 and on or about December 10, 2013, LINVILLE made approximately ninety (90) ATM withdrawals from the Scott County State Bank account ending in 3552, totaling approximately $14,250.

61.    Between on or about April 11, 2013 and on or about December 10, 2013, LINVILLE made personal purchases using a debit card for the Scott County State Bank account ending in 3552, including a purchase at Charlestown Liquor.

### D. Citizens Union Bank

62.    On or about August 15, 2014, BENNETT and LINVILLE opened a checking account ending in 7795 in the name of Wounded Warrior Foundation, Inc. at Citizens Union Bank in Louisville, Kentucky.

63.    On or about August 15, 2014, BENNETT placed an order for checks with Harland Clarke for a Citizens Union Bank checking account for Wounded Warrior Foundation, Inc. with an account number ending in 7795. On or about August 19, 2014, the checks for Wounded Warrior Foundation, Inc. were mailed from Harland Clarke to 206 East Main Street, Henryville, Indiana.

64.    Between on or about August 15, 2014 and on or about September 2, 2014, BENNETT deposited approximately fifty-five (55) checks made payable to Wounded Warrior

Fund, Wounded Warrior Foundation, and similarly named entities into a Citizens Union Bank checking account with an account number ending in 7795.

65.     Between on or about August 15, 2014 and on or about September 2, 2014, BENNETT wrote approximately four (4) checks made payable to "cash" from a Citizens Union Bank checking account with an account number ending in 7795, totaling approximately $1,600.

### E. First Savings Bank

66.     On or about September 4, 2014, BENNETT and JOHNSON opened a checking account ending in 5928 in the name of Wounded Warrior Foundation at First Savings Bank in Jeffersonville, Indiana.

67.     On or about September 5, 2014, BENNETT placed an order for checks with Harland Clarke for a First Savings Bank checking account for Wounded Warrior Foundation, Inc. with an account number ending in 5928.  On or about September 11, 2014, the checks were mailed to 206 East Main Street, Henryville, Indiana.

68.     Between on or about September 4, 2014 and on or about February 6, 2015, members of the conspiracy deposited approximately 234 checks made payable to Wounded Warrior Fund, Wounded Warrior Foundation, and similarly named entities into a First Savings Bank checking account with an account number ending in 5928.

69.     Between on or about September 4, 2014 and on or about February 6, 2015, BENNETT made approximately eight (8) cash withdrawals from a First Savings Bank checking account with an account number ending in 5928, totaling approximately $2,750.

70.     Between on or about September 4, 2014 and on or about February 6, 2015, JOHNSON made approximately seven (7) cash withdrawals from a First Savings Bank checking account with an account number ending in 5928, totaling approximately $1,100.

71.     Between on or about September 4, 2014 and on or about February 6, 2015, BENNETT wrote approximately two (2) checks made payable to "cash" from a First Savings Bank checking account with an account number ending in 5928, totaling approximately $430.

72.     Between on or about September 4, 2014 and on or about February 6, 2015, BENNETT and JOHNSON wrote approximately fifteen (15) checks to BENNETT from a First Savings Bank checking account with an account number ending in 5928, totaling approximately $9,200.

73.     Between on or about September 4, 2014 and on or about February 6, 2015, BENNETT and JOHNSON wrote approximately sixteen (16) checks to JOHNSON from a First Savings Bank checking account with an account number ending in 5928, totaling approximately $9,550.

74.     Between on or about September 4, 2014 and on or about February 6, 2015, BENNETT and JOHNSON wrote approximately two (2) checks to LINVILLE from a First Savings Bank checking account with an account number ending in 5928, totaling approximately $1,450.

75.     Between on or about September 4, 2014 and on or about February 6, 2015, WATSON received and deposited a check from a First Savings Bank checking account with an account number ending in 5928, totaling approximately $395.

**F. Stock Yards Bank Account ending in 8638**

76.     On or about December 17, 2014, BENNETT and JOHNSON opened a checking account ending in 8368 in the name of Wounded Warrior Foundation, Inc. at Stock Yards Bank in Clarksville, Indiana.

77.     On or about December 23, 2014, participants in the conspiracy placed an order for checks for a Stock Yards Bank checking account for Wounded Warrior Foundation, Inc. with an account number ending in 8368.

78.     Between on or about December 17, 2014 and on or about August 13, 2015, BENNETT and JOHNSON deposited approximately 279 checks made payable to Wounded Warrior Fund, Wounded Warrior Foundation, and similarly named entities into a checking account at Stock Yards Bank ending in 8368.

79.     Between on or about December 17, 2014 and on or about August 13, 2015, BENNETT made approximately nine (9) cash withdrawals from a checking account at Stock Yards Bank ending in 8368, totaling approximately $2,000.

80.     Between on or about December 17, 2014 and on or about August 13, 2015, JOHNSON made approximately seven (7) cash withdrawals from a checking account at Stock Yards Bank ending in 8368, totaling approximately $5,300.

81.     Between on or about December 17, 2014 and on or about August 13, 2015, LINVILLE made approximately thirteen (13) cash withdrawals from a checking account at Stock Yards Bank ending in 8368, totaling approximately $7,900.

82.     Between on or about December 17, 2014 and on or about August 13, 2015, participants in the conspiracy made approximately three (3) ATM withdrawals from a checking account at Stock Yards Bank ending in 8368, totaling approximately $700.

83.     Between on or about December 17, 2014 and on or about August 13, 2015, approximately thirty-five (35) checks were made payable to BENNETT from a checking account at Stock Yards Bank ending in 8368, totaling approximately $6,300.

**G. Stock Yards Bank Account ending in 9318**

84.     On or about August 10, 2015, LINVILLE and JOHNSON opened a checking account ending in 9318 in the name of Wounded Warrior Foundation, Inc. at Stock Yards Bank in Clarksville, Indiana.

85.     Between on or about August 10, 2015 and on or about March 17, 2016, LINVILLE and JOHNSON deposited approximately 281 checks made payable to Wounded Warrior Fund, Wounded Warrior Foundation, and similarly named entities into a checking account at Stock Yards Bank ending in 9318.

86.     Between on or about August 10, 2015 and on or about March 17, 2016, JOHNSON made approximately twenty (20) cash withdrawals from a checking account at Stock Yards Bank ending in 9318, totaling approximately $8,700.

87.     Between on or about August 10, 2015 and on or about March 17, 2016, LINVILLE made approximately twenty-two (22) cash withdrawals from a checking account at Stock Yards Bank ending in 9318, totaling approximately $10,200.

88.     Between on or about August 10, 2015 and on or about March 17, 2016, members of the conspiracy made approximately thirty-four (34) ATM withdrawals from a checking account at Stock Yards Bank ending in 9318, totaling approximately $6,200.

**III.     Solicitations**

89.     On or about August 25, 2015, JOHNSON faxed a document to an individual to solicit donations for a purported "Back to School Program" for Wounded Warrior Foundation, Inc.  The letter stated, "There are 3 Scott County children to sponsor for this years shopping program.  Each child will receive $200.00 in clothing and supplies.  Any support is greatly appreciated!"  The fax purports to be from Paul Bradley.

90.     On or about September 14, 2015, JOHNSON faxed a document to an individual to solicit donations for a purported "Back to School Program" for Wounded Warrior Foundation, Inc. The letter stated, "There are 3 Scott County active-duty military families with 7 school-age children we want to sponsor this year. We will spend $200.00 in clothing and school supplies on each child! Any support will stay in Scott Co. and is greatly appreciated! We will give [the business] a thank you ad in our 2015 yearbook that will have a 1,500 circulation here in Scott County." The fax purports to be from Paul Bradley.

91.     On or about February 18, 2016, JOHNSON faxed a document to an individual regarding a donation made to Wound Warrior Foundation, Inc. for a purported "Int'l Care Package." Included in the fax is a receipt for a donation. The receipt purports to be for the "Overseas Veteran Calling Card & Family Assistance Programs." The fax purports to be from Paul Bradley.

**IV.     Obstruction of the Investigation**

92.     On or about July 7, 2017, LINVILLE left multiple voicemails for a Detective of the Clark County Sheriff's Department threatening that he would file a "personal injury" lawsuit against the Detective if he continued to investigate Wounded Warrior Foundation, Incorporated. LINVILLE said, "You got some problems coming bud . . . you've got major problems . . . Put me in a jail, I dare you. I'll make a mockery of your court . . . I will make a mockery of your fucking court and I'll destroy the Sheriff's Department." LINVILLE also threatened to expose information about the Fraternal Order of Police of various organizations in the State of Indiana if the Detective continued his investigation. LINVILLE continued, "Watch what I do to you, dog. Fundraising won't be the same. And I'm going to sue your FOP. I'm suing you personally. I'm going to put your ass in jeopardy. Lock me up motherfucker, watch what happens. My parents

will get me out and I will own you." LINVILLE later stated, "I would have walked away from this motherfucker. All you had to do was leave me the fuck alone. Now you got war. So arrest me. I dare you. I'll get right out. Sovereign citizen. Make a mockery of your Court. I'll dismiss your fucking judge. Him beating his gavel as he can't do fucking shit. Watch!" LINVILLE stated, "I'm going to tell everyone that the FOP doesn't give all the money away. And that they're trash and everything else. I'm going to run you motherfuckers down. You know, it's coming, dog."

## SPECIFIC OFFENSES

### Count 1

[18 U.S.C. §§ 1343 and 1349 - Conspiracy to Commit Wire Fraud]

The Grand Jury charges that:

93.     The General Allegations set forth above in paragraphs 1 through 93 are re-alleged and incorporated herein as if set out in full.

94.     From on or about December 1, 2011 continuing to a date unknown to the Grand Jury, but as late as July 7, 2017, in the Southern District of Indiana, and elsewhere,

**JAMES LINVILLE, THOMAS JOHNSON,
AMY BENNETT, and JOANIE WATSON,**

the defendants herein, and others known and unknown to the Grand Jury, did conspire with each other to commit the offense of wire fraud, defined by Title 18, United States Code, Section 1343, as transmitting or causing a transmission by means of wire communication in interstate commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing a scheme or artifice to defraud and to obtain money by means of false or fraudulent pretenses, representations, and promises, and the defendants, in the furtherance of the conspiracy and in order to achieve the objective of the conspiracy, committed at least one of the overt acts

described in the General Allegations paragraphs of this Indictment in the Southern District of Indiana.

All of which is in violation of Title 18, United States Code, Sections 1343 and 1349.

## Count 2

[18 U.S.C. §§ 1341 and 1349 - Conspiracy to Commit Mail Fraud]

The Grand Jury further charges that:

95.     The General Allegations set forth above in paragraphs 1 through 92 are re-alleged and incorporated herein as if set out in full.

96.     From on or about December 1, 2011 continuing to a date unknown to the Grand Jury, but as late as July 7, 2017, in the Southern District of Indiana, and elsewhere,

**JAMES LINVILLE, THOMAS JOHNSON,
AMY BENNETT, and JOANIE WATSON,**

the defendants herein, and others known and unknown to the Grand Jury did conspire with each other to commit the offense of Mail Fraud, defined by Title 18, United States Code, Section 1341, as placing in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or taking or receiving therefrom, any such matter or thing, or knowingly causing to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, for the purpose of executing a scheme or artifice to defraud and to obtain money by means of false or fraudulent pretenses, representations, and promises, and the defendants, in the furtherance of the conspiracy and in order to achieve the objective of the conspiracy, committed at least one of the overt acts described in the General Allegations paragraphs of this Indictment in the Southern District of Indiana.

All of which is in violation of Title 18, United States Code, Sections 1341 and 1349.

## Counts 3-4

[18 U.S.C. § 1341 – Mail Fraud]

The Grand Jury further charges that:

97.     The General Allegations set forth above in paragraphs 1 through 92 are re-alleged and incorporated herein as if set out in full.

98.     Between on or about August 19, 2014, and on or about September 11, 2014, in the Southern District of Indiana, and elsewhere, the defendants named in each count below, for purposes of executing the scheme and attempting to execute the scheme described in the General Allegations paragraphs of this Indictment, did place in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, and did take and receive therefrom, any such matter or thing, and knowingly caused to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, as identified in each count below, and aided and abetted others in so doing.

| COUNT NUMBER | ON OR ABOUT DATE OF MAILING | DEFENDANTS AIDING, ABETTING, AND CAUSING THE MAILING | DOCUMENTS MAILED | COMPANY SENDING MAIL INTO THE SOUTHERN DISTRICT OF INDIANA |
|---|---|---|---|---|
| 3 | 19 August 2014 | Amy Bennett James Linville | Harland Clarke Checks for Citizens Union Bank checking account ending in 7795 | Harland Clarke, San Antonio, Texas |

| 4 | 11 September 2014 | Amy Bennett Thomas Johnson | Harland Clarke Checks for First Savings Bank checking account ending in 5928 | Harland Clarke, San Antonio, Texas |
|---|---|---|---|---|
| | | | | |

All of which is in violation of Title 18, United States Code, Sections 1341 and 2.

## Count 5

[18 U.S.C. § 1343 - Wire Fraud]

The Grand Jury further charges that:

99.     The General Allegations set forth above in paragraphs 1 through 92 are re-alleged and incorporated herein as if set out in full.

100.     On or about August 11, 2014, in the Southern District of Indiana, and elsewhere,

**JAMES LINVILLE and THOMAS JOHNSON**

the defendants herein, for purposes of executing the scheme and attempting to execute the scheme described in the General Allegations paragraphs of this Indictment, did transmit and cause to be transmitted by means of wire communication in interstate commerce, any writings, signs, signals, pictures, or sounds, by engaging a person in Indiana known to the Grand Jury to submit an online application to obtain an Employer Identification Number from an Internal Revenue Service center located outside Indiana, aiding in the preparation and submission of the application, and thereby obtaining an Employer Identification Number for the Wounded Warrior Foundation Incorporated which was used to execute the scheme.

All of which is in violation of Title 18, United States Code, Sections 1343 and 2.

## Counts 6-70

[18 U.S.C. § 1343 - Wire Fraud]

The Grand Jury further charges that:

101.    The General Allegations set forth above in paragraphs 1 through 92 are re-alleged and incorporated herein as if set out in full.

102.    Between on or about April 11, 2013, and on or about February 22, 2016, in the Southern District of Indiana, and elsewhere, the defendants named in each count below, for purposes of executing the scheme and attempting to execute the scheme described in the General Allegations paragraphs of this Indictment, did transmit and cause to be transmitted by means of wire communication in interstate commerce, any writings, signs, signals, pictures, or sounds, by engaging in financial transactions within the Southern District of Indiana with banking institutions that process financial transactions using computer servers located outside of Indiana, as identified in each count below, and aided and abetted others in so doing.

| COUNT NUMBER | ON OR ABOUT DATE OF TRANSMISSION | DEFENDANT(S) CAUSING AND AIDING IN THE TRANSMISSION | TRANSMISSION DESCRIPTION | ORGANIZATION RECEIVING TRANSMISSION |
|---|---|---|---|---|
| 6 | 11 April 2013 | James Linville | Check Cashed Made Payable to "Cash" | Scott County State Bank, Texas |
| 7 | 12 April 2013 | James Linville | Check Cashed Made Payable to Self | Scott County State Bank, Texas |
| 8 | 17 April 2013 | James Linville | Check Cashed Made Payable to "Cash" | Scott County State Bank, Texas |
| 9 | 19 April 2013 | James Linville | Check Cashed Made Payable to "Cash" | Scott County State Bank, Texas |

| 10 | 19 April 2013 | James Linville | Check Cashed Made Payable to Self | Scott County State Bank, Texas |
|----|---------------|----------------|-----------------------------------|-------------------------------|
| 11 | 25 April 2013 | James Linville | ATM Withdrawal | Scott County State Bank, Texas |
| 12 | 1 May 2013 | James Linville | ATM Withdrawal | Scott County State Bank, Texas |
| 13 | 6 May 2013 | James Linville | ATM Withdrawal | Scott County State Bank, Texas |
| 14 | 6 May 2013 | James Linville | ATM Withdrawal | Scott County State Bank, Texas |
| 15 | 3 June 2013 | James Linville | ATM Withdrawal | Scott County State Bank, Texas |
| 16 | 17 July 2013 | James Linville | ATM Withdrawal | Scott County State Bank, Texas |
| 17 | 28 August 2013 | James Linville | Check Cashed Made Payable to Self | Scott County State Bank, Texas |
| 18 | 5 September 2013 | James Linville | Check Cashed Made Payable to "Cash" | Scott County State Bank, Texas |
| 19 | 15 November 2013 | James Linville | Check Cashed Made Payable to "Cash" | Scott County State Bank, Texas |
| 20 | 16 November 2013 | James Linville | Check Cashed Made Payable to "Cash" | Scott County State Bank, Texas |
| 21 | 8 September 2014 | Thomas Johnson | Checking Account Withdrawal | First Savings Bank, Florida |
| 22 | 12 September 2014 | Amy Bennett | Checking Account Withdrawal | First Savings Bank, Florida |

| 23 | 17 September 2014 | Thomas Johnson | Checking Account Withdrawal | First Savings Bank, Florida |
|----|-------------------|----------------|------------------------------|----------------------------|
| 24 | 17 September 2014 | Amy Bennett | Checking Account Withdrawal | First Savings Bank, Florida |
| 25 | 19 September 2014 | Amy Bennett | Check Cashed Made Payable to "Cash" | First Savings Bank, Florida |
| 26 | 22 September 2014 | Amy Bennett | Check Cashed Made Payable to "Cash" | First Savings Bank, Florida |
| 27 | 22 September 2014 | Amy Bennett Joanie Watson | Check Cashed Made Payable to Joanie Watson | First Savings Bank, Florida |
| 28 | 22 September 2014 | Thomas Johnson | Check Cashed Made Payable to Self | First Savings Bank, Florida |
| 29 | 26 September 2014 | Thomas Johnson Amy Bennett | Check Cashed Made Payable to Thomas Johnson | First Savings Bank, Florida |
| 30 | 26 September 2014 | Thomas Johnson Amy Bennett | Check Cashed Made Payable to Amy Bennett | First Savings Bank, Florida |
| 31 | 29 September 2014 | Thomas Johnson | Check Cashed Made Payable to Self | First Savings Bank, Florida |
| 32 | 1 October 2014 | Amy Bennett James Linville | Check Cashed Made Payable to James Linville | First Savings Bank, Florida |
| 33 | 6 October 2014 | Amy Bennett Thomas Johnson | Check Cashed Made Payable to Amy Bennett | First Savings Bank, Florida |
| 34 | 6 October 2014 | Amy Bennett Thomas Johnson | Check Cashed Made Payable to Thomas Johnson | First Savings Bank, Florida |
| 35 | 14 October 2014 | Amy Bennett Thomas Johnson | Check Cashed Made Payable to Thomas Johnson | First Savings Bank, Florida |

| | | | | |
|---|---|---|---|---|
| 36 | 14 October 2014 | Amy Bennett<br>Thomas Johnson | Check Cashed Made Payable to Amy Bennett | First Savings Bank, Florida |
| 37 | 14 October 2014 | Amy Bennett | Check Cashed Made Payable to Self | First Savings Bank, Florida |
| 38 | 27 October 2014 | Amy Bennett<br>Thomas Johnson | Check Cashed Made Payable to Amy Bennett | First Savings Bank, Florida |
| 39 | 27 October 2014 | Amy Bennett<br>Thomas Johnson | Check Cashed Made Payable to Thomas Johnson | First Savings Bank, Florida |
| 40 | 22 December 2014 | Thomas Johnson | Checking Account Withdrawal | Stock Yards Bank, Kentucky |
| 41 | 23 December 2014 | Thomas Johnson | Checking Account Withdrawal | Stock Yards Bank, Kentucky |
| 42 | 24 December 2014 | Amy Bennett | Checking Account Withdrawal | Stock Yards Bank, Kentucky |
| 43 | 20 January 2015 | Thomas Johnson | Checking Account Withdrawal | Stock Yards Bank, Kentucky |
| 44 | 26 January 2015 | Amy Bennett | Checking Account Withdrawal | Stock Yards Bank, Kentucky |
| 45 | 28 January 2015 | Amy Bennett | Check Cashed Made Payable to Self | Stock Yards Bank, Kentucky |
| 46 | 16 February 2015 | Amy Bennett | Check Cashed Made Payable to Self | Stock Yards Bank, Kentucky |
| 47 | 14 May 2015 | Amy Bennett | Check Cashed Made Payable to Self | Stock Yards Bank, Kentucky |
| 48 | 8 June 2015 | Amy Bennett | Check Cashed Made Payable to Self | Stock Yards Bank, Kentucky |

| | | | | |
|---|---|---|---|---|
| 49 | 3 July 2015 | James Linville | Checking Account Withdrawal | Stock Yards Bank, Kentucky |
| 50 | 10 July 2015 | Amy Bennett | Checking Account Withdrawal | Stock Yards Bank, Kentucky |
| 51 | 13 July 2015 | James Linville | Checking Account Withdrawal | Stock Yards Bank, Kentucky |
| 52 | 15 July 2015 | James Linville | Checking Account Withdrawal | Stock Yards Bank, Kentucky |
| 53 | 21 July 2015 | James Linville | Checking Account Withdrawal | Stock Yards Bank, Kentucky |
| 54 | 22 July 2015 | James Linville | Checking Account Withdrawal | Stock Yards Bank, Kentucky |
| 55 | 24 July 2015 | James Linville | Checking Account Withdrawal | Stock Yards Bank, Kentucky |
| 56 | 29 July 2015 | James Linville | Checking Account Withdrawal | Stock Yards Bank, Kentucky |
| 57 | 3 August 2015 | James Linville | Checking Account Withdrawal | Stock Yards Bank, Kentucky |
| 58 | 20 August 2015 | James Linville | Checking Account Withdrawal | Stock Yards Bank, Kentucky |
| 59 | 21 August 2015 | James Linville | Checking Account Withdrawal | Stock Yards Bank, Kentucky |
| 60 | 27 August 2015 | Thomas Johnson | Checking Account Withdrawal | Stock Yards Bank, Kentucky |
| 61 | 28 August 2015 | Thomas Johnson | Checking Account Withdrawal | Stock Yards Bank, Kentucky |

| 62 | 14 September 2015 | James Linville | Checking Account Withdrawal | Stock Yards Bank, Kentucky |
|----|-------------------|----------------|-----------------------------|---------------------------|
| 63 | 2 October 2015 | Amy Bennett | ATM Withdrawal | Stock Yards Bank, Kentucky |
| 64 | 15 October 2015 | Thomas Johnson | Checking Account Withdrawal | Stock Yards Bank, Kentucky |
| 65 | 28 October 2015 | James Linville | Checking Account Withdrawal | Stock Yards Bank, Kentucky |
| 66 | 3 November 2015 | James Linville | ATM Withdrawal | Stock Yards Bank, Kentucky |
| 67 | 17 November 2015 | James Linville | Checking Account Withdrawal | Stock Yards Bank, Kentucky |
| 68 | 23 November 2015 | Thomas Johnson | Checking Account Withdrawal | Stock Yards Bank, Kentucky |
| 69 | 25 January 2016 | Thomas Johnson | Checking Account Withdrawal | Stock Yards Bank, Kentucky |
| 70 | 22 February 2016 | Thomas Johnson | Checking Account Withdrawal | Stock Yards Bank, Kentucky |

All of which is in violation of Title 18, United States Code, Sections 1343 and 2.

# FORFEITURE

1.      The allegations in this Indictment are realleged as if fully set forth here, for the purpose of giving the defendants notice, pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, that the United States intends to pursue forfeiture of property pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 1956(c)(7)(A), 1961(1) and Title 28, United States Code, Section 2461(c) as part of any sentence imposed.

2.      Upon conviction of an offense in violation of Title 18, United States Code, Section 1343, Title 18, United States Code, Section 1341, and Title 18, United States Code, Section 1349 as set forth in this Indictment, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

3.      If any of the property described above, as a result of any act or omission of the defendants:

        A.      cannot be located upon the exercise of due diligence;

        B.      has been transferred or sold to, or deposited with, a third party;

        C.      has been placed beyond the jurisdiction of the court;

        D.      has been substantially diminished in value; or

        E.      has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c). In keeping with the foregoing, it is the intent of the United States to seek forfeiture of any other

property of the defendants up to the value of all forfeitable property as described above in paragraph 2.

4.    In addition, the United States may seek civil forfeiture of the property described above in paragraphs 2 and 3 pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

A TRUE BILL:



FOREPERSON

JOSH J. MINKLER
United States Attorney

by: _____
Kyle M. Sawa
Assistant United States Attorney